1  BENJAMIN B. WAGNER
   United States Attorney
2  JEFFREY A. SPIVAK
   Assistant U. S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700

5  Attorneys for Plaintiff
   United States of America

FILED

MAR 25 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | 1:15-CV-00237---SKO |
|---|---|
| Plaintiff, | **ORDER REGARDING CLERK'S ISSUANCE OF WARRANT FOR ARREST OF ARTICLES *IN REM*** |
| v. | |
| APPROXIMATELY $40,600.00 IN U.S. CURRENCY, | |
| Defendant | |

WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on February 12, 2015, in the United States District Court for the Eastern District of California, alleging that defendant approximately $40,600.00 in U.S. currency (hereafter "Defendant Currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6); for one or more violations of 21 U.S.C. § 841 *et seq.*;

And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In Rem* and the affidavit of Drug Enforcement Special Agent Philip Hartshorne (attached hereto), there is probable cause to believe that the Defendant Currency so described constitutes property that is subject to forfeiture for such violation(s), and that grounds for

Order Regarding Clerk's Issuance of Arrest Warrant of       1
Articles *In Rem*

the issuance of a Warrant for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

IT IS HEREBY ORDERED that the Clerk for the United States District Court, Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the Defendant Currency.

Dated: March 24, 2015

SHEILA K. OBERTO
United States Magistrate Judge

# AFFIDAVIT OF PHILIP HARTSHORNE

I, Philip Hartshorne, being first duly sworn under oath, depose and say:

1. I am employed by the United States Department of Justice, Drug Enforcement Administration ("DEA"), as a Special Agent and have been so employed since July 2012, and am presently assigned to the Fresno Resident Office. As a DEA Special Agent ("SA"), I am charged specifically with the enforcement of the Controlled Substances Act and the investigation of Federal drug violations, including but not limited to, Title 21, United States Code (U.S.C.), Sections 841(a)(1) and 846. I received sixteen weeks of training in narcotics investigations at the Drug Enforcement Administration Academy in Quantico, Virginia. This training included instruction in the investigation of Federal drug violations, including, but not limited to 21 U.S.C. §§ 841 and 846.

2. In addition, I have completed various training provided by DEA and local law enforcement agencies, including, but not limited to training on identifying characteristics associated drug trafficking including the use, possession, packaging, sale, concealment, manufacturing, and transportation of various controlled substances as well as its precursors and chemicals used in the manufacturing process. I am familiar with narcotics traffickers' methods of operation including distribution, storage, manufacturing, and transportation of narcotics and collection of money proceeds of narcotics trafficking. I have assisted on the execution of numerous federal and state narcotics search warrants that resulted in the arrest of suspects and seizure of narcotics.

3. I have learned that large scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business. It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles, and other items of value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting, or spending large sums

of money acquired from engaging in the acquisition and distribution of controlled substances in their residence, vehicles, safes, storage containers, and in other areas under their control.

4. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am an officer of the United States, empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

5. This affidavit is made in support of a warrant for arrest of approximately $40,600.00 in U.S. Currency (hereafter "Defendant Currency"). The Defendant Currency constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange and/or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq.* As a result of the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

6. The facts set forth in this affidavit are known to me as a result of reviewing official reports, documents, and other evidence obtained as a result of the investigation, and through conversations with other agents and detectives who have participated in this investigation and I have determined the following:

7. On September 11, 2014, agents with the Drug Enforcement Administration received information that Josue Pedro Grajeda (hereafter "Grajeda") was traveling on a one way ticket purchased on September 10, 2014, from Denver, Colorado to Fresno, California by way of Phoenix, Arizona via U.S. Airways flight 2950 on September 11, 2014. A search of law enforcement databases revealed that Grajeda had a criminal history relating to narcotics, including a May 2014 incident (discussed below).

8. DEA agents and additional law enforcement made contact with Grajeda after

Affidavit of Special Agent Philip Hartshorne                                 2

1  he arrived at the airport. Grajeda was subsequently contacted by two law enforcement
2  officers. Grajeda was advised that he was not under arrest and free to leave. When asked
3  if Grajeda had narcotics or anything dangerous in his bag, Grajeda stated that he did not
4  but advised that he was carrying some money. When asked how much money he was
5  carrying, Grajeda stated that he had about $20,000.00.

6     9.   Law enforcement agents then asked Grajeda for permission to view the
7  currency and Grajeda consented, walked to some nearby seats in the terminal and
8  voluntarily opened his bag. Once Grajeda had opened the bag, law enforcement agents
9  observed what appeared to be a large amount of currency contained in tightly-compressed,
10 vacuum sealed, clear plastic.

11    10.  When asked by law enforcement if he had been previously arrested, Grajeda
12 said that he had not. When asked if he was carrying any other currency, Grajeda
13 produced a stack of rubber banded bills from his pocket along with a small amount of
14 currency that was not rubber banded. Subsequently, the non-rubber-banded currency was
15 returned to Grajeda.

16    11.  When asked by law enforcement agents, why he was carrying so much money,
17 Grajeda indicated that he was in Fresno to purchase a 2009 Silver Jaguar for $30,000.
18 When asked if he had an advertisement for the vehicle, Grajeda indicated he did not.
19 When asked by law enforcement what Grajeda did for a living he (Grajeda) advised that
20 he was a truck driver and that he owns JAG Trucking. When asked if he had a contact
21 number for the person from whom he was to buy the vehicle, Grajeda responded that he
22 did not. When asked if he knew the name of the person from whom he was to buy the
23 vehicle Grajeda said that he did not know. When asked by law enforcement how he
24 intended to pay the $10,000.00 difference, after the $20,000.00 he (Grajeda) stated he was

Affidavit of Special Agent Philip Hartshorne         3

1 carrying in order to purchase the $30,000.00 vehicle, Grajeda advised that he would owe the seller an additional $10,000.00.

12. When asked by law enforcement how he intended to get to the vehicle he intended to purchase, Grajeda advised that his buddy "John" was taking him. When asked if John had a last name or a phone number so that law enforcement could contact "John" to authenticate Grajeda's story, Grajeda advised that he did not know "John's" last name or telephone number. When asked how he intended to get back to Colorado, Grajeda advised that he planned to drive the vehicle he was in Fresno to purchase back to Colorado.

13. Towards the end of the interview after learning that law enforcement agents would be seizing the Defendant Currency, Grajeda expressed concern that he would be unable to afford a rental car since they were taking his money. An agent asked Grajeda why he could not use a credit card to rent a vehicle and Grajeda stated that he did not have any credit cards. Agents subsequently asked Grajeda to produce his wallet at which point they observed the wallet to contain what appeared to be credit cards. When asked about the credit cards in his wallet, Grajeda relayed that the credit cards belonged to his mom.

14. Upon conclusion of the interview and prior to walking away from law enforcement agents Grajeda stated that there was actually $40,000.00 in the vacuum sealed bag containing the currency.

15. The interview with Grajeda concluded at approximately 9:47 p.m. At approximately 9:55 p.m., a controlled sniff of the currency was conducted wherein narcotic detecting canine "Duce" made a positive alert on the money for the presence of narcotics. Duce a 2 year old Labrador retriever, is a P.O.S.T. certified narcotics detection canine.

Affidavit of Special Agent Philip Hartshorne           4

Duce has received approximately 400 hours of training and was certified in narcotics detection to detect marijuana, cocaine, methamphetamine, heroin, and opium.

16. On May 6, 2014 (just four months prior to the subject incident), Grajeda was stopped by the California Highway Patrol in Fresno, California on suspicion of driving under the influence. Grajeda was traveling with other passengers. During a search of the vehicle, law enforcement located a large amount of U.S. currency (later determined to be $18,600.00) in the center console which was vacuum wrapped in plastic. Grajeda and the two passengers disclaimed ownership of the currency, which was administratively forfeited to the United States.

17. Through further investigation, law enforcement discovered that Grajeda had flown into Fresno from out of state the day prior, May 5, 2014, and was staying in room 263 at the Piccadilly Inn- Airport in Fresno. Law enforcement subsequently sought and obtained a search warrant for Grajeda's hotel room. During the search of Grajeda's hotel room, law enforcement located a large cardboard box which was found to contain two blue plastic bins containing 21 vacuum sealed bags filled with processed marijuana. The bags of processed marijuana were subsequently weighed and weighed in excess of 23 pounds.

18. Grajeda is currently facing state criminal charges in the Fresno County Superior Court relating to this incident.

Based on the foregoing, I have probable cause to believe that the Defendant Currency is proceeds from drug trafficking. Additionally, "[T]he filing of the forfeiture complaint allows the government immediately to obtain a warrant for the arrest of the *res*, without any further showing of probable cause. Indeed, arrest of the res is a jurisdictional requirement." United States v. $191,910.00 in United States Currency, 16 F.3d 1051 (9th Cir. 1994). It is respectfully requested that a Warrant for Arrest of Articles *In Rem*,

Affidavit of Special Agent Philip Hartshorne    5

pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions Rule G(3)(b)(i), be issued for the Defendant Currency.

PHILIP HARTSHORNE
Special Agent
Drug Enforcement Administration

Sworn to and Subscribed before me this 24 day of March 2015.

HON. SHEILA K. OBERTO
United States Magistrate Judge

Reviewed and approved as to form

/s/ Jeffrey A. Spivak
JEFFREY A. SPIVAK
Assistant U.S. Attorney

Affidavit of Special Agent Philip Hartshorne                6